# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JHONATHAN VICTORIA JAVIER,** | : | **CIVIL NO. 1:16-CV-561** |
| **Petitioner,** | : | **(Judge Caldwell)** |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CRAIG LOWE, et al.,** | : | |
| **Respondents.** | : | |

## REPORT AND RECOMMENDATION

**I.   Factual Background**

On April 4, 2016, Jhonathan Victoria Javier filed a petition for writ of habeas corpus which alleged that the petitioner, an alien residing in the United States, had been placed in removal proceedings, and has been detained pre-removal, pursuant to a mandatory detention statute for more than 580 days. (Doc. 1.) With the passage of more than one year in immigration detention, the petitioner came before this court on a petition for writ of habeas corpus, seeking an individualized bail consideration.

On the basis of these averments, two days later, on April 6, 2016, we found that the petitioner had alleged facts which suggested that the petitioner may be entitled to relief under Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 475 (3d Cir. 2015). In Chavez-Alvarez the court of appeals held that in a case where an alien who is prosecuting a good faith challenge to his or her removal from the United States has

been held in pre-removal detention: " beginning sometime after [a] six-month time frame . . . , and certainly by the time [the alien] had been detained for one year, the burdens to [the petitioner's] liberties outweigh[] any justification for using presumptions to detain him without bond to further the goals of the statute. We conclude that the underlying goals of the statute would not have been, and will not now be undermined by requiring the Government to produce individualized evidence that [the petitioner's] continued detention was or is necessary." Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 478 (3d Cir. 2015). Accordingly, we ordered the Respondents to file an expedited response addressing this issue, and show cause on or before April 15, 2016 why the petitioner should not be granted habeas corpus relief. (Doc. 2.)

The government filed its response on April 15, 2016, as directed, and conceded that under Chavez-Alvarez the petitioner was entitled to an individualized bond hearing before an immigration judge. (Doc. 5.) The government reiterated this position in a telephonic conference shall be held on the petition on April 18, 2016, and further agreed to immediately waive its right to object to any Report and Recommendation which recommended that Javier receive a prompt individualized bond hearing. (Doc. 6.)

In light of these developments it is recommended that the district court grant the

petition and order an individualized bond hearing for Javier to be conducted before an Immigration Judge, "at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute," Diop v. ICE/Homeland Sec., 656 F.3d 221, 233 (3d Cir. 2011), something the government concedes should take place in this case.

## II. Discussion

One of the statutory and constitutional duties conferred upon this court is the responsibility to address federal habeas corpus petitions filed by immigration detainees who challenge their immigration detention as unconstitutionally excessive. Over the past several years, case law in this field has evolved significantly, providing far greater clarity to the courts regarding the benchmarks they should apply when discharging this important responsibility, a duty rooted in our constitution.

Most recently, in Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469 (3d Cir. 2015), the court of appeals has provided us with an analytical paradigm to apply when assessing these immigration excessive detention claims in a pre-removal context. As the court explained in outlining the legal terrain in this field:

> Before 1996, significant numbers of aliens convicted of serious crimes were taking advantage of their release on bond as an opportunity to flee, avoid removal, and commit more crimes. Demore v. Kim, 538 U.S. 510, 518–19, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003). Congress fixed this problem by enacting section 1226(c), expanding the range of serious crimes for which the Government was required to detain convicted aliens. Notably, section 1226(c) does not give the Attorney General any

authority to release these aliens on bond. Id. at 521, 123 S.Ct. 1708. The Supreme Court left no doubt that the Government's authority under section 1226(c) to detain aliens without an opportunity for bond complies with the Constitution. Id. at 531, 123 S.Ct. 1708. However, as we discuss below, we read Demore as also recognizing that there are limits to this power. Diop, 656 F.3d 221; Leslie v. Attorney Gen. of the United States, 678 F.3d 265 (3d Cir.2012). When the Supreme Court upheld the constitutionality of the law in Demore, it also gave us insight into how, from a due process perspective, section 1226(c)'s allowance of detention without bail worked. The Court reiterated the fundamental idea that aliens are protected by constitutional due process. Demore, 538 U.S. at 523, 123 S.Ct. 1708 (citing Reno v. Flores, 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993)). But, it put the alien's issue in perspective, saying " '[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens.' " Id. at 521, 123 S.Ct. 1708 (quoting Mathews v. Diaz, 426 U.S. 67, 79–80, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976)). The Court went on to say that applying " 'reasonable presumptions and generic rules' " to groups of aliens—for purposes of due process—can be consistent with the idea that aliens can be treated differently. Id. at 526, 123 S.Ct. 1708 (quoting Flores, 507 U.S. at 313, 113 S.Ct. 1439); see also Carlson v. Landon, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952). The Court, in essence, concluded that Congress lawfully required the Attorney General to make presumptions of flight and dangerousness about the alien solely because he belonged to the group of aliens convicted of the types of crimes defined in section 1226(c).

Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 472 73 (3d Cir. 2015).

Thus, the court in Chavez-Alvarez recognized that Demore held that mandatory detention of certain criminal aliens pending removal proceedings does not, by itself, offend due process. However, the Demore Court based this ruling upon its understanding of the short, fixed and finite term of any detention prior to removal which typically should not exceed 6 months. Yet, while Demore addressed the due

process issues that arise from the fact that, for certain criminal aliens, detention pending removal is mandatory, it is also clear that courts still have an independent responsibility to assess whether the duration of any mandatory detention is so extended and unreasonable as to violate due process.

Further, the court in Chavez-Alvarez provided us with clear guidance in assessing the reasonableness of the duration of any mandatory immigration detention. This determination entails a balancing test, and while noting that "[b]y its very nature, the use of a balancing framework makes any determination on reasonableness highly fact-specific," Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 474 (3d Cir. 2015), the court enjoins us that there are several guideposts which we must consider. First, in a case where an alien is prosecuting a good faith challenge to his or her removal from the United States, the appellate court held that, "beginning sometime after the six-month time frame considered by Demore, and certainly by the time [the alien] had been detained for one year, the burdens to [the petitioner's] liberties outweigh[] any justification for using presumptions to detain him without bond to further the goals of the statute. We conclude that the underlying goals of the statute would not have been, and will not now be undermined by requiring the Government to produce individualized evidence that [the petitioner's] continued detention was or is necessary." Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 478 (3d Cir. 2015).

In prescribing this one-year time frame beyond which the presumption of detention is sufficiently eroded that an individualized bail consideration is necessary, the appellate court also defined what showing the government must make in order to justify the continued detention of the petitioner. According to the court, the immigration statute " 'implicitly authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community.' " Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 475 (3d Cir. 2015). Further, once "detention becomes unreasonable, the Due Process Clause demands a hearing, *at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute*." Diop v. ICE/Homeland Sec., 656 F.3d 221, 233 (3d Cir. 2011)(emphasis added.)

Applying Chavez-Alvarez to the facts of this case, we conclude–and the government concedes–that Javier has made a *prima facie* showing justifying an individualized bail hearing. Thus, all parties agree that Javier's legal challenge to his removal is presented in good faith, the initial benchmark cited by the court in Chavez-Alvarez. It is also undisputed that the current duration of Javier's detention now exceeds one-year a period of time which Chavez-Alvarez found to be presumptively excessive.

Finding that an individualized bail hearing is appropriate in this case, it is recommended that this Court order that an Immigration Judge in the first instance conduct this individualized bond hearing. Indeed, in Chavez-Alvarez, the appellate court suggested that, in many instances, this initial bail determination can, and should, be made by the Immigration Judge, applying the constitutional benchmarks outlined by the courts. Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 478 n.12 (3d Cir. 2015). This guidance, in turn, is consistent with other case law in this field, where federal courts have frequently referred these bail questions to Immigration Judges in the first instance. See, e.g., Casas-Castrillon v. Dep't of Homeland Security, 535 F.3d 942 (9th Cir. 2008); Reid v. Donelan, 991 F. Supp. 2d 275 (D. Mass. 2014); Chen v. Aitken, 917 F. Supp. 2d 1013 (N.D. Cal. 2013); Sengkeo v. Horgan, 670 F. Supp. 2d 116 (D. Mass. 2009); Bourguignon v. MacDonald, 667 F. Supp. 2d 175 (D. Mass. 2009); Wilks v. U.S. Dep't of Homeland Security, No. 07-2171, 2008 WL 4820654 (M.D. Pa. Nov. 3, 2008). Moreover, this course of action is entirely consistent with settled case law directing such hearings before immigration judges for petitioners like Javier whose extended pre-removal detention falls within the ambit of the ruling in Chavez-Alvarez. See e.g., Vale v. Sabol, No. 1:15-CV-2249, 2015 WL 8602751, at *1 (M.D. Pa. Dec. 14, 2015); Singh v. Sabol, No. 1:14-CV-1927, 2015 WL 3519075, at *1 (M.D. Pa. June 4, 2015), appeal dismissed (Sept. 9, 2015).

Further, consistent with settled case law, given that it is conceded that this period

of "detention [has] become[] unreasonable, the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute." Diop v. ICE/Homeland Sec., 656 F.3d 221, 233 (3d Cir. 2011).

Finally, given the representations of the parties at the April 18, 2016 status conference held by the court that they agree to forego their 15 day objection periods in light of the delay which has occurred to date, and Javier's clear entitlement to habeas corpus relief, it is further recommended that the district court may, in its discretion, immediately grant relief to Javier by directing a prompt individualized bond hearing before an Immigration Judge.

### III. **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the district court GRANT the petition and order an individualized bond hearing for Javier within 21 days of today's date at which hearing the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed

findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 18th day of April, 2016.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge